UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SYED SAADET ALI FARA SHAH, aka Syed Mutsjab Shah,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil No.:  10-CV-0012-L<br>Criminal No.  02-CR-2912-L<br><br>**ORDER:**<br>**1) DENYING MOTION PURSUANT TO 28 U.S.C. § 2255 WITH PREJUDICE [ECF NO. 184];**<br><br>**2) DENYING  MOTION TO INSPECT GRAND JURY MINUTES AND MOTION TO DISMISS INDICTMENT [ECF NO. 212]:**<br><br>**3) DENYING MOTION TO WITHDRAW PLEA OF GUILTY AND AMEND [ECF NO. 214[;**<br><br>**4) DENYING MOTION FOR APPOINTMENT OF COUNSEL AND TO CONDUCT DISCOVERY [ECF NO. 225.]**<br><br>**5) DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner, Syed Mutsjab Shah ("Petitioner") proceeding *pro se*, filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence.  The Court has

reviewed the motion and the record and, for the reasons set forth below, denies Petitioner's Motion.

## I. BACKGROUND

On March 30, 2006, Petitioner pled guilty without a plea agreement to one count of conspiracy to distribute heroin and hashish in violation of 21 U.S.C. §§ 841(a)(1) and one count of conspiracy to provide material support to terrorists in violation of 18 U.S.C. §§ 2339B(a)(1) and (d). On September 25, 2006, this Court sentenced Petitioner to a term of imprisonment of 225 months.

On September 28, 2007, the Ninth Circuit Court of Appeals affirmed Petitioner's conviction and sentence. On December 21, 2009, Petitioner filed a motion pursuant to 28 U.S.C. § 2255 in which he contends he received ineffective assistance of counsel and that his conviction was obtained through a coerced confession. By Order dated January 5, 2010, the Court dismissed Petitioner's motion as untimely because it was not filed within the applicable period of limitations. Petitioner appealed the decision to the Ninth Circuit Court of Appeals on April 9, 2010. On January 23, 2012, the appellate court vacated this Court's order, and remanded with instructions to allow Petitioner an opportunity to demonstrate that his § 2255 motion was timely filed. On August 30, 2014, this Court found that extraordinary circumstances caused Mr. Shah's untimeliness, equitable tolling applied, and deemed Mr. Shah's 2255 petition timely filed. The Court now turns to the merits of Mr. Shah's 2255 petition.

## II. DISCUSSION

"A claim of ineffective assistance [of counsel] may be used to attack the voluntariness and hence the validity of a guilty plea." *United States v. Keller*, 902 F.2d 1391, 1394 (9th Cir. 1990); see *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985). To prevail on an ineffective assistance of counsel claim, a defendant must show that counsel's performance was deficient and that this deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Jeronimo*, 398 F.3d 1149, 1155 (9th Cir. 2005). In the context of guilty pleas, to satisfy the "prejudice"

requirement "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Defense counsel's conduct is presumed to be reasonable. *Strickland*, 466 U.S. at 689.

Petitioner alleges attorney Nietor provided ineffective assistance when he: (1) lied to Petitioner about the plea by promising him a sentence of 57 months if he signed the agreement; (2) failed to translate the plea agreement and had Petitioner sign an agreement he did not understand; (3) threatened to withhold legal services if Petitioner did not sign the plea agreement; (4) threatened Petitioner with a sentence of "life or worse" if he did not sign the plea agreement; (5) coerced Petitioner into signing the plea agreement by telling him that the Government and the Court did not care if he was innocent; (6) coerced Petitioner to plead guilty by telling him that if he did not plead guilty he might get killed because "the government can arrange for accidents to happen to [Petitioner]" in custody. (Motion 6.) Petitioner further alleges he received deficient performance because his attorney: (1) failed to challenge the Court's jurisdiction over the charged offenses; (2) failed to challenge the Government's ability to conduct an undercover investigation in a foreign land (Hong Kong); (3) failed to challenge the lawfulness of Petitioner's extradition to the United States; (4) failed to seek dismissal of the indictment on jurisdictional grounds; (5) failed to pursue an entrapment defense on Petitioner's behalf; (6) failed to challenge the Government's breach of the plea agreement; and (7) failed to persuade the Court to give Petitioner a lower sentence. (Petitioner's Memorandum of Law 2.) Petitioner filed additional allegations after the Government responded to his original Petition emphasizing that the interpreter at his change of plea hearing omitted key points so Petitioner did not fully understand (1) he was facing a ten year minimum, and (2) his right to insist on his innocence may be impaired. (Petitioner's Reply at 4.)

//
//

*A. Plea Agreement*

Petitioner makes numerous arguments concerning a plea agreement, including that attorney Nietor: (1) lied to him about the plea agreement by promising him a sentence of 57 months if he signed the agreement; (2) failed to translate the plea agreement; (3) threatened to withhold legal services; (4) threatened Petitioner with a sentence of "life or worse"; (5) coerced Petitioner by telling him that the Government and the Court did not care if he was innocent. (Mot. 6.)   In support, Petitioner attached a Draft Plea Agreement, in which he claims it is evident that his attorney promised he will receive a sentence of less than 10 years. (Supp. Mem. at 3; Ex A.)

The Government responds that there was no plea agreement in this case, therefore, "it is a factual impossibility for attorney Nietor to have acted in a constitutionally deficient manner with respect to a plea agreement, as no such agreement existed in this case." (Response in Opposition at 5.)

The Court agrees. There is no merit to Petitioner's claims that attorney Nietor lied to him regarding his potential sentence as an inducement to sign the plea agreement, failed to ensure he understood the terms of the agreement, threatened to withhold legal services if Petitioner did not sign the agreement, or otherwise coerced him into signing the plea agreement, as there was no plea agreement in this case.  Accordingly, the Court **DENIES** Petitioner's claims of ineffective assistance of counsel related a plea agreement as moot.

*B. Guilty Plea*

By entering a guilty plea without a plea agreement, Petitioner preserved his right to collaterally attack his judgment and sentence under 28 U.S.C. § 2255.  The right to collaterally attack a sentence under § 2255 is statutory in nature. *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994); *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993).  "'[A] plea of guilty entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by

promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'" *United States v. Kaczynski*, 239 F.3d 1108, 1114 (9th Cir. 2001) (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)) (alteration in *Kaczynski*). "It goes without saying that a plea must be voluntary to be constitutional." *Id.* A plea is considered voluntary when it "'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Id.* (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). A guilty plea is void when it is "induced by promises or threats which deprive it of the character of a voluntary act." *Id.* (internal quotations omitted).

In assessing the voluntariness of the plea, the court must accord great weight to statements made by the defendant contemporaneously with his plea. *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986). The representations of the defendant, his lawyer, and the prosecutor, as well as the judge's findings in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.* at 74; *see also Kaczynski*, 239 F.3d at 1115 ("We give 'substantial weight' to [petitioner's] in-court statements.") (quoting *United States v. Mims*, 928 F.2d 310, 313 (9th Cir. 1991)).

First, Petitioner argues that attorney Nietor induced him to plead guilty by promising that he would be sentenced to 57 years. (Mot. 6; Reply 3-4.) Petitioner claims that he was particularly susceptible to the pressure placed on him by attorney Nietor because Petitioner suffers from a mental impairment and does not speak English, requiring him to rely on the services of an interpreter who he claims did not provide the exact words of the Court but instead paraphrased everything in a way that deleted key points including that he was facing a 10 year minimum sentence and that he had a right to persist in his claim of innocence. (Reply 4.) Next, Petitioner claims that attorney Nietor

threatened to withhold legal services if Petitioner did not plead guilty. (Mot. at 6.) Finally, Petitioner claims that he pled guilty because attorney Nietor led him to believe that if he didn't plead guilty and insisted on going to trial he might "get killed" because "the government can arrange for accidents to happen… in custody." (*Id.* at 6.) Petitioner moves to withdraw his guilty plea on the grounds that he was provided ineffective assistance of counsel because his attorney failed to investigate the facts underlying the case, he was coerced and was misled to enter a guilty plea.[1] (Mot. Withdraw Plea at 1 [ECF NO. 214.])

In response, the Government directs the Court's attention to the plea colloquy where Petitioner stated he understood that the minimum sentence he would receive would be ten years on Count 1 of the Indictment, the drug conspiracy charge. (Resp. 5.) Moreover, the Government notes that attorney Nietor stated in his sworn declaration that he would never have promised Petitioner that he would receive a 57 month sentence if he entered a guilty plea but instead told him that under the Sentencing Guidelines Petitioner was facing a sentence well in excess of 57 months considering the offenses with which he was charged. (*Id.*) The Government argues that there is no support in the record for Petitioner's claim that attorney Nietor threatened to withdraw his legal services if Petitioner did not plead guilty, and notes that Petitioner stated he was content with his attorney's services during the plea colloquy. (*Id.* 6.) In fact, the Government notes that Petitioner stated he was entering the guilty plea of his own free will and at the advice of

---

[1] Petitioner also contends he was denied his right to counsel under Article 36 of the Vienna Convention. (*Id.*) Article 36 of the Convention was drafted to "facilitat [e] the exercise of consular functions" and provides that if a person detained by a foreign country "so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State" of such detention, and "inform the [detainee] of his righ[t]" to request assistance from the consul of his own state. Art. 36(1), 21 U.S.T., at 100-101; *see also Medellin v. Texas*, 552 U.S. 491, 499 (2008). Petitioner appears to be contending that the United States government should have advised him of his right to seek assistance from the consul of Pakistan, however this claim is unrelated to the issue before the Court, which is the effectiveness of Petitioner's appointed attorney, Mr. Nietor, therefore the Court declines to address the merits of this claim.

his attorney. (*Id.*) As for Petitioner's claim that attorney Nietor told him he might be killed while in custody if he didn't plead guilty, the government argues the claim is absurd and points to attorney Nietor's sworn declaration in which he states that he never told Petitioner that if he chose to take the case to trial he might get killed. (*Id.* at 7.) Because no threat was ever made by attorney Nietor, there is nothing in the record to support the allegation, according to the government. (*Id.*)

Looking to the statements made contemporaneously to his plea, the Court finds no merit to Petitioner's claim that Nietor coerced him into pleading guilty, threatened him, or hinted at having him killed. Moreover, there is no support in the record for Petitioner's contention that he did not understand the terms of the plea due to deficient translation into his native language. In fact, the record supports a contrary position.

At the plea hearing, Petitioner acknowledged he understood the charges against him, and was "happy" with the services of his attorney:

>   Court:       Are you satisfied with the services of your counsel?
>   Defendant:   Yes, I am happy.

(Resp. Ex. A, Tr. of Plea Hr'g at 14.)

The Court informed Petitioner that he had a right to persist in his plea of not guilty, yet Petitioner chose to admit his guilt:

>   Court:       Okay. Now, are you pleading guilty today because you are, in fact, guilty of count 1, conspiracy to distribute heroin and hashish, and count 3, conspiracy to provide material support to a designated terrorist organization?
>   Defendant:   Oh, what did he say?
>   Court:       Are you pleading guilty here today because you are, in fact, guilty of count 1 and 3?
>   Defendant:   Okay.
>   Court:       Well, you need to say yes or no.
>   Defendant:   Yes. At the advice of my attorney, I am accepting it, that I am guilty.
>   Nietor:      Your honor, may I have a moment?
>   Court:       Yes, please
>   (Counsel conferring with defendant)
>   Nietor:      Thank you, your honor.

| | | |
|---|---|---|
| The Court: | Okay. Well, let me cover that and make sure he is clear. Are you pleading guilty because you are, in fact, guilty as charged? | |
| Defendant: | Yes. | |
| Court: | All right. The clerk will accept the plea. | |
| Clerk: | Now that you have been advised of your rights, the charges against you and the possible sentence, how do you plead to counts 1 and 3 of the indictment: are you guilty or not guilty. | |
| Defendant: | Yes. Guilty. | |

*Id*. at 14–16.

Petitioner further acknowledged that the court had the power to impose a sentence that was either more severe or less severe than the sentence called for by the guidelines. *Id*. at 12. When asked whether he had any questions regarding sentencing or sentencing guidelines, Petitioner, through his interpreter, responded: "Tell the judge that I understood everything." *Id*. at 13. The Court found Petitioner entered the guilty plea freely and voluntarily; he understood the elements of the crime and the maximum penalty; and there was a factual basis for the plea. *Id*. at 20.

Although Petitioner now contends that his attorney initially promised that he would only receive 57 months custody, attorney Nietor stated in a declaration:

> I never promised Petitioner that he would receive a 57 month sentence if he entered a guilty plea. Rather, I informed him of the applicable United States Sentencing Guideline calculations which, given the offenses Petitioner was alleged to have committed, call for the imposition of a sentence well in excess of 57 months. I also informed Petitioner that the Court would make the ultimate sentencing decision in his case and that I was unable to predict the sentence the Court would impose.

(Resp.'s Ex. C, Nietor Decl. ¶ 4.)

Petitioner's assertion that he would not have pleaded guilty but for his attorney's coercion and threats is not supported by any evidence in the record. Such a bare allegation is insufficient to set aside his guilty plea. *See United States v. Sutton*, 794 F.2d 1415, 1422 (9th Cir. 1986). Accordingly, having considered the substantial weight accorded Petitioner's on-the-record statements, Petitioner's challenge to the voluntariness of his plea because of his counsel's performance is without merit. *See Strickland*, 466

U.S. at 687. For these reasons, Petitioner's request to withdraw his guilty plea because he was allegedly denied effective assistance of counsel is **DENIED.**

### C. *Jurisdiction, Extradition, Entrapment and Investigation*

Petitioner alleges attorney Nietor rendered deficient performance by failing to file motions: (1) challenging the Court's jurisdiction over the charged offenses; (2) challenging the government's ability to conduct an undercover investigation in a foreign land (Hong Kong); and (3) challenging the lawfulness of Petitioner's extradition to the United States.[2]

The government counters that attorney Nietor correctly determined that the referenced motions would be meritless because: (1) the Court had jurisdiction over both Petitioner and the charged offense, (2) the manner by which a defendant is brought to trial does not affect the government's ability to try him; and (3) law enforcement officials from the United States can conduct a portion of their activities outside the territorial bounds of the United States when the foreign government cooperates. (Resp. 8.)

#### i.  *Jurisdiction*

Petitioner contends that the Court lacked jurisdiction because the alleged crimes took place outside the geographical and territorial jurisdiction of the United States and therefore the indictment should be dismissed and his conviction vacated. (Pet. at 3.) He further contends that counsel was ineffective for failing to raise the jurisdictional issue. (*Id*. at 2.) The government claims attorney Nietor correctly determined that a motion to

---

[2] Petitioner argues that attorney Nietor should have posited an entrapment defense because Petitioner was enticed to travel from Pakistan to Hong Kong by government agents who purchased airline tickets for him, gave him pocket money and covered the hotel expense. (Mem. P&A 7.) However, an entrapment defense was not a proper ground for a pretrial motion, as attorney Nietor states he told Petitioner in his declaration. Nietor said "I explained the law of entrapment to Petitioner and told him that such a claim was a trial defense, as opposed to a pretrial motion. I further explained to Petitioner that if he chose to enter a guilty plea he would be foregoing his right to present an entrapment defense." (Nietor Dec. at 4 [ECF No. 220-3].) Attorney Nietor was under no obligation to raise the meritless legal argument concerning entrapment because Petitioner pled guilty, therefore, Petitioner's claim fails. *See Baumann v. United States*, 692 F.2d 565, 573 (9th Cir. 1982) (The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.")

dismiss the indictment for a lack of jurisdiction was meritless. (Govt. Resp. 8.)

Generally, a challenge to the sufficiency of an indictment must be raised prior to trial, but "[a] motion that the court lacks jurisdiction may be made at any time while the case is pending." Fed.R.Crim.P. 12(b)(2). Under Section 2255, this Court has authority to determine whether it had jurisdiction to impose the conviction and sentence Petitioner received. *See United States v. Addonizio*, 442 U.S. 178, 185(1979). Here, the Court properly exercised jurisdiction over Petitioner because the crimes with which he was charged, conspiracy to distribute heroin and hashish into the United States in violation of 21 U.S.C. §§ 846 and 841(a)(1), and conspiracy to provide material support to terrorists, in violation 18 U.S.C. §2339B(a) and (d) are offenses against the laws of the United States. *See* 18 U.S.C. §3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.") Further, many of the events that formed the basis of the conspiracy charged in the Indictment occurred within the Southern District of California, therefore venue was proper in this Court. *Whitfield v. United States*, 543 U.S. 209 (2005). Accordingly, it would have been futile for attorney Nietor to file a motion challenging subject matter jurisdiction and therefore, his representation was not deficient. *Bauman*, 692 F2d at 573 ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.")

### ii. *Undercover investigation*

Petitioner argues that his attorney provided deficient representation by failing to challenge United States law enforcement officials' authority to conduct the undercover investigation in a foreign land without the host country's knowledge and consent. (Mot. 2.) The government disagrees, claiming that attorney Nietor correctly decided to forgo filing a motion claiming that the United States improperly conducted part of the investigation in Hong Kong. (Resp. 8.)

United States agents involved in the investigations of international organizations seeking to smuggle drugs into the United States may, when foreign governments are

willing to cooperate, conduct a portion of their activities outside the territorial bounds of the United States. *United States v. Felix-Gutierrez*, 940 F2d. 1200, 1204 (9th Cir. 1991). Attorney Nietor wisely did not challenge the extraterritorial investigation of the alleged offenses because Petitioner was charged with conspiracy to import heroin and hashish in violation of 21 U.S.C. §952, 960 and 963 and the investigation of these international crimes necessarily required some action in a foreign country. *See United States v. Larsen*, 952 F.2d 1099, 1100 (9th Cir. 1991); *Brulay v. United States*, 383 F.2d 345, 350 (9th Cir. 1967). The government of Hong Kong cooperated to the extent that they executed the warrant, thereby implicitly condoning the investigation that led to the charges. Therefore, Petitioner's claim that his attorney provided deficient performance for failing to challenge the extraterritorial investigation of his crimes lacks merit.

        iii.    *Extradition*

Petitioner was arrested on September 20, 2002, in Hong Kong after meeting with United States undercover agents and his co-conspirators to finalize the details of the transaction. Officers from the Hong Kong police department placed Petitioner under arrest pursuant to a provisional arrest request filed by the United States, after which interviews were conducted. Petitioner initially invoked his right to counsel, but a month later, in October 2002, United States law enforcement officers returned to Hong Kong to conduct an interview with him. Subsequently, the United States Marshals service transported Petitioner to the Southern District of California.

Petitioner claims his attorney rendered deficient performance by failing to challenge his extradition, arguing that the double criminality principle dictates that the crime with which he is charged be punishable as a serious crime in both countries in order for him to be extradited, which was not true here. (Pet. 4.) According to Petitioner, the government of Hong Kong and Interpol gave him a written statement in which they asserted that the alleged crimes against Petitioner were not considered serious crimes under the laws of Hong Kong and the statement declares there was a lack of supporting evidence to substantiate the allegations by the United States. (*Id*.) Petitioner contends

that the letter was given to the U.S. Marshals, who then gave it to the prosecutors after Petitioner saw it, and was never introduced into evidence or given to defense counsel which violated his due process rights. (*Id.*)

The government responds that any challenge to Petitioner's extradition would have been frivolous because the Supreme Court has long held that the manner by which a defendant is hailed into court does not affect the government's ability to try him. (Resp. 8.) Therefore, even if the extradition had been flawed, which it wasn't, it could not have formed the basis of an ineffective assistance of counsel claim. (*Id.*)

A "statute or extradition treaty is a prerequisite to extradition." *Cornejo–Barreto v. Seifert*, 218 F.3d 1004, 1009 (9th Cir.2000). Extradition consists of "the surrender by one nation to another of an individual accused or convicted of an offense outside of its own territory, and within the territorial jurisdiction of the other, which, being competent to try and to punish him, demands the surrender." *Terlinden v. Ames*, 184 U.S. 270, 289 (1902). The federal extradition statute provides, in relevant part:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government ..., any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States ..., may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention ..., issue his warrant for the apprehension of the person so charged ...

18 U.S.C. § 3184.

Prior to July 1, 1997, Hong Kong was under the control of the United Kingdom, therefore the treaty with the United Kingdom of Great Britain and Northern Ireland, U.S.-U.K., 28 U.S.T. 227 governed extradition proceedings, and recognized the principle of dual criminality. *Oen Yin-Choy v Robinson*, 858 F.2d 1400, 1404 (9th Cir. 1988) ("Under the principle of dual criminality, no offense is extraditable unless it describes conduct which is criminal in both jurisdictions.") "Dual criminality, for extradition purposes,

1  does not require that offense in foreign country have identical counterpart under laws of
2  United States, rather, dual criminality requires only that acts alleged constitute crime in
3  both jurisdictions." *Bozilov v. Seifert*, 983 F.2d 10 (9th Cir. 1992).

4  During the commission of the present offenses, Hong Kong had become the Hong
5  Kong Special Administrative Region ("HKSAR"), an "inalienable part" of the People's
6  Republic of China, but distinct for purposes of "arrangements with foreign states for
7  reciprocal juridical assistance." *Cheung v. United States*, 213 F.3d 82, 84 (2nd Cir. 2000).
8  As a result of this political shift, the "Agreement with Hong Kong for the Surrender of
9  Fugitive Offenders" ("Agreement") dictated the circumstances under which extradition
10 was authorized. The Agreement specifies that the HKSAR will surrender any person
11 who is found in Hong Kong to the United States where that person is wanted by the
12 United States for prosecution in respect to listed offenses, which includes "[o]ffenses
13 against the laws relating to drugs, including narcotics. . . and offenses relating to the
14 proceeds of drug trafficking" *Agreement for the Surrender of Fugitive Offenders*, Dec.
15 20, 1996, U-S- H.K., S.Treaty Doc. No. 105-3, Art 2 (vii). The treaty enumerates certain
16 offenses and states that the fugitive offenders will be surrendered for any of these
17 offenses provided the offense at issue is punishable by more than one year of detention
18 under the laws of both jurisdictions. *See In re Extradition of Chan Seong-I,* 346 F.Supp.
19 1149, 1159 (D. New Mexico 2004).

20 Petitioner was charged with conspiracy to import and distribute heroin and hashish,
21 crimes related to narcotics which carried sentences punishable by more than one year of
22 detention. *See* USSG § 2D1.1; Sentencing Table (Nov. 2005). Therefore, the Agreement
23 authorized the government of Hong Kong to arrest Petitioner and arrange for extradition
24 to the United States. Despite Petitioner's claims that he saw a document in which the
25 government of Hong Kong stated the case lacked physical evidence, corroborating
26 statements, and sufficient evidence of the more serious allegations, this assertion is
27 contradicted by the conduct of the officials in the HKSAR who found sufficient evidence
28 to arrest him pursuant to a provisional arrest warrant filed by the United States. In light

of the fact that the Agreement provides sufficient legal support for Petitioner's extradition, attorney Nietor did not provide deficient representation by failing to challenge Petitioner's extradition because such a motion would have been meritless. *Bauman*, 692 F2d at 573.  For the foregoing reasons, the Court **DENIES** Petitioner's ineffective assistance of counsel claims related to jurisdiction, extraterritorial jurisdiction and extradition.

    D.    *Sentencing challenges*

Petitioner alleges that attorney Nietor rendered ineffective assistance of counsel for his failure to challenge the government's breach of the plea agreement and failure to persuade the Court to give Petitioner a sentence within the range it sentenced his co-defendant in the same case.  (Mot. 2.)  Instead, Petitioner alleges the Court relied on a prior conviction from another country to increase his sentence by 180 months more than his co-defendant, which his attorney did not challenge.  (Supp. Doc. at 6 [ECF No. 232.])

In contrast, the government contends that although the "Court ultimately imposed a 225 month sentence in this case, attorney Nietor strongly advocated on Petitioner's behalf at the sentencing hearing, requesting a sentence of 120 months" which was the lowest possible sentence the Court could impose due to the mandatory minimum penalties associated with Petitioner's conviction on Count 1 of the Indictment.  (Resp. 9.)  In light of the fact that Petitioner's counsel advocated for the lowest possible sentence he adequately and properly represented Petitioner's interests during the sentencing proceedings in the government's view.  (*Id.*)

Petitioner's contention that his attorney rendered deficient performance for failing to challenge the plea agreement is moot because there was no plea agreement in this case. In addition, the sentencing transcript indicates that Petitioner's attorney argued effectively for every possible factor that could mitigate the term of his sentence. *See Lambright v. Schriro*, 490 F.3d 1103, 1115-1116 (9th Cir. 2007) (counsel has a duty to investigate and present mitigating evidence during sentencing.)  Attorney Nietor first noted that Petitioner was a minor participant in the agreement, and should be given a

1  minor role reduction to reflect that his involvement began over two years after the initial
2  investigation began and that he did not lead the negotiations, but merely agreed by
3  acquiescence.  (Reporter's Transcript at 5, February, 10, 2006 [ECF NO. 206.])  Next,
4  Petitioner's attorney argued that the Court should consider Petitioner's significant
5  physical and psychological ailments which would make any lengthy incarceration
6  exceptionally difficult for him.  (*Id*. at 5-6.) He pointed out that Petitioner was a low-
7  functioning individual and that his mental health issues had caused him to "lay in the
8  fetal position at MCC, urinate in public, hear voices." (*Id*. 6.)  Attorney Nietor noted for
9  the Court that Petitioner's co-defendants had each received 57 months, and with the
10 minor role adjustment, Petitioner's sentence would be in the 63-78 month range, but that
11 if the Court imposed the minimum mandatory sentence, Petitioner would receive 120
12 months, a significant disparity from his codefendants sentences. (*Id*. at 6.)  Petitioner's
13 counsel concluded that "any sentence over 120 months would be excessive and quite
14 probably be a life sentence for Mr. Shah." (*Id*. 6-7.)  The record belies Petitioner's
15 contention that his prior conviction for heroin smuggling in the United Kingdom
16 increased his sentence without objection by his attorney.  Instead, the Court stated that
17 the prior conviction did not score for purposes of a sentence enhancement, and that as a
18 result, Petitioner remained in a Criminal History Category 1 instead of a category 3,
19 which would have increased his potential sentence considerably.  (*Id*. at 16.)
20    For the above reasons, the Court finds that Petitioner's counsel did not provide
21 deficient performance during sentencing proceedings, and these claims fail. *Schriro*, 490
22 F.3d at 1115-1116.

### III. MOTION TO INSPECT GRAND JURY MINUTES AND DISMISS INDICTMENT

25 Petitioner moves to dismiss the indictment as defective on the grounds that the
26 government knowingly introduced perjured testimony and deceived the grand jury. (Mot.
27 to Inspect at 1 [ECF NO 212.])  Petitioner claims the government failed to properly
28 instruct the grand jury and that the grand jury proceedings were defective because the

evidence was not legally sufficient to establish jurisdiction.  (*Id*.)  In his view, an examination of the grand jury minutes is needed to allow Petitioner to effectively present his claims.  (*Id*. at 2.)

Petitioner does not indicate what government testimony was allegedly perjured during the grand jury proceedings, therefore, it is impossible for this Court to determine whether review of the grand jury proceedings minutes is warranted.  To the extent Petitioner is claiming that there was insufficient evidence to establish jurisdiction for the offense charged, the Court considered this claim above and determined that jurisdiction was proper.  Petitioner has failed to demonstrate that inspection of the grand jury minutes is required, and further, that dismissal of the indictment on these grounds is necessary.  Accordingly, the Court **DENIES** Petitioner's motion.

### IV.   MOTION TO CONDUCT DISCOVERY AND APPOINT COUNSEL

Petitioner contends that the complexity of his case, coupled with his indigency, and mental disability make it impossible for him to conduct the discovery required to support his claims properly without help from appointed counsel.  (Mot. Discovery at 4-5.)  In order to fully develop his ineffective assistance of counsel and actual innocence claims for the Court, Petitioner argues that he needs assistance of counsel to conduct investigation and interrogatories to gather evidence crucial to the claims and allegations presented in the motion, including his claim that his plea was coerced and his assertion that counsel promised him a 57 month sentence.  (*Id*. at 5.)

Any financially eligible person who is seeking relief under section 2255 of title 28 may be appointed counsel whenever the Court determines that the interests of justice so require.  18 U.S.C §3006A(2).  Appointment of counsel is mandatory only when evidentiary hearings are required.  *Bashor v. Risley,* 730 F.2d 1228, 1234 (9th Cir. 1984).  "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."

Rules Governing §2255 Proceedings, Rule 6(a), 28 U.S.C.A. foll. §2255. Rule 6(b) states: "A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents." *Id*.

      In support of his request, Petitioner claims that he needed the assistance of counsel to conduct discovery and obtain the declaration of his co-defendant, Muhammad Abid Afridi, which would have provided support for his claim that he was induced to plead guilty by the false representation of his attorney that he would only receive 57 months in custody. (Mot. at 5.) Petitioner does not include any other specific requests for discovery, but alludes to evidence and interrogatories that would help him develop his claims more fully. As demonstrated above, there is no evidence in the record that Petitioner's counsel told him that he would only receive 57 months custody, and in fact, the sentencing transcript demonstrates that counsel argued for every conceivable variance to bring down the sentence Petitioner faced. Even if the Court appointed counsel for Petitioner, and he was able to procure Afridi's declaration, it would not alter the landscape upon which Petitioner was sentenced nor invalidate counsel's declaration in which he stated that he did not promise a 57 month sentence to Petitioner. While the Court acknowledges that Petitioner's indigency weighs in favor of appointing counsel, he has effectively represented himself by filing numerous documents including his Petition, Memorandum of Points and Authorities, Supplemental Memorandum, Motion to Inspect Grand Jury Minutes, and Motion to Dismiss Indictment for lack of jurisdiction. Moreover, Petitioner raised complex arguments in support of his Petition and Motion to Dismiss, including the theory of dual criminality in regard to his extradition. *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)("In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.") Because Petitioner has effectively represented himself, and the evidence he seeks would not change the balance of the analysis

regarding his claims, the Court declines to exercise its discretion to appoint counsel and permit discovery. Accordingly, the Court **DENIES** Petitioner's Motion to Appoint Counsel and Motion for Discovery.

## V. CERTIFICATE OF APPEALABILITY

A certificate of appealability is authorized "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, Petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). Petitioner does not have to show "'that he should prevail on the merits. He has already failed in that endeavor.'" *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (internal quotation omitted).

Petitioner has not made a substantial showing that he was denied a constitutional right and the Court is not persuaded that jurists could disagree with the Court's resolution of his claims or that the issues presented deserve encouragement to proceed further. Therefore, a certificate of appealability is **DENIED**.

//
//
//
//
//
//
//
//
//
//
//
//

## VI.  CONCLUSION

For the reasons set forth above, the Court finds that the claims contained in Petitioner's Motion under 28 U.S.C. § 2255 have no merit.  Accordingly, Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is **DENIED with prejudice**. The Court further:

(1)  **DENIES** Motion to Inspect Grand Jury Minutes and Dismiss Indictment [ECF NO. 212];

(2) **DENIES** Motion to Withdraw Guilty Plea and Amend [ECF NO. 214];

(3) **DENIES** Motion for Appointment of Counsel and Conduct Discovery [ECF NO. 225]

(4) **DENIES** Certificate of Appealability

**IT IS SO ORDERED.**

Dated:  September 30, 2016

_____
Hon. M. James Lorenz
United States District Judge

COPY TO:
PETITIONER
U.S. ATTORNEY'S OFFICE